IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

DONNA F. COLLINS, *et al.*,

    Plaintiffs,

    v.                             CIVIL NO.: WDQ-13-0532

WAL-MART STORES EAST,
    LP, *et al.*,

    Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Donna F. Collins ("Mrs. Collins")[1] sued Wal-Mart Stores East, LP ("Wal-Mart East") and Wal-Mart Stores Incorporated ("Wal-Mart Inc."), (collectively "Wal-Mart"), for negligence. ECF No. 2. Wal-Mart removed to this Court. ECF No. 1. Pending is Wal-Mart's motion for summary judgment. ECF No. 13. No hearing is necessary. Local Rule 105.6 (D. Md. 2011). For the following reasons, summary judgment will be denied.

---

[1] Mrs. Collins's husband, John M. Collins ("John"), is also a named plaintiff. ECF No. 2 ¶¶ 1, 21.

I. Background[2]

On January 2, 2012, Mrs. Collins visited a Wal-Mart store in Baltimore, Maryland with her son, Jacob Collins ("Jacob"), and Jacob's girlfriend, Alicia Herold.[3] ECF No. 14-2 at 9. After they completed their shopping and checked out at a cash register, they walked down the back aisle behind the cash registers toward the exit. See ECF Nos. 13-2 at 4, 13-4 (surveillance video). Jacob walked a few steps in front of Mrs. Collins and Herold, pushing their shopping cart. See id. At 2:34 pm--about halfway between the exit and the end of the line of cash registers--Mrs. Collins slipped and fell on water that was on the floor. ECF Nos. 13-2 at 5, 13-4, 13-5 at 4, 14-4 at 2. Jacob and Mrs. Collins did not notice the water before Mrs. Collins fell.[4] See ECF Nos. 13-2 at 4, 13-3 at 4.

---

[2] The facts are taken from Wal-Mart's motion, ECF No. 13, Mrs. Collins's opposition, ECF No. 14, Wal-Mart's reply, ECF No. 15, and their supporting exhibits. In reviewing a motion for summary judgment, the nonmovant's evidence "is to be believed, and all justifiable inferences are to be drawn in [her] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

[3] Mrs. Collins lives in Baltimore, Maryland with her three adult sons, including Jacob. ECF No. 14-2 at 5. Her husband John lives in Dundalk, Maryland. See id.; ECF No. 2 ¶ 1.

[4] In their depositions, Mrs. Collins and Jacob testified that they did not know how long the water was on the floor before Mrs. Collins fell or how it got on the floor. ECF Nos. 13-2 at 6, 13-3 at 5. The parties did not include evidence from Herold in their exhibits.

Jacob attempted to help Mrs. Collins up, but she declined his help because of pain in the left side of her body.[5] See ECF No. 14-2 at 10. A Wal-Mart assistant manager, Crystal Day, approached and offered her assistance. See id.; ECF No. 14-4. Day brought a chair for Mrs. Collins, and Jacob helped her into it. See ECF Nos. 13-4, 14-2 at 10. Mrs. Collins declined Day's offer to call an ambulance. ECF No. 14-2 at 10. Another Wal-Mart employee, Gary Ivey--the asset protection manager[6] for the store--arrived while Mrs. Collins was still sitting in the chair. ECF Nos. 13-4, 14-3 at 19-20. Day escorted Mrs. Collins, Jacob, and Herold to a Dunkin' Donuts restaurant in the store and asked Mrs. Collins to complete an incident report. See ECF No. 14-2 at 11. Mrs. Collins agreed, and she and Herold completed incident reports. See id. at 11-12.

---

[5] In her deposition, Mrs. Collins testified that she has had recurring hip pain since her fall, which has prevented her from performing some household chores and errands that she used to do. See ECF No. 14-2 at 7-8. She also received medical treatment for her pain at the Baltimore Medical Center. Id. at 8. Mrs. Collins has not worked since 2005, before her fall. See id. at 5.

[6] As an asset protection manager, Ivey "was responsible for general store safety." ECF No. 14-3 at 5. Daily, Ivey would "walk the sales floor . . . looking for [non-secure] products [and] a better way to secure the items." Id. He would also "walk the floor" to ensure "people are putting ladders up when they're done with them, clean up spills, pick up trash off the floor, any type of slip, trip, and fall hazard." Id. When Mrs. Collins fell, Ivey managed one employee--an asset protection associate--who was also responsible for monitoring safety conditions in the store. Id. at 5-6.

3

In the meantime, a warning sign was placed by the water spill, and Ivey stood by the spill until another employee brought him a camera. *See* ECF Nos. 13-4, 13-5 at 5, 14-3 at 15, 20-21. Ivey took three photographs of the spill and then cleaned it up in under a minute with paper towels. *See* ECF No. 14-3 at 15, 22. He returned to his office where he completed an incident report, which was transmitted electronically to Wal-Mart's insurance company, CMI. ECF Nos. 13-5 at 4, 14-3 at 14. Ivey's report noted that the surface on which Mrs. Collins fell was clean, but had water spots, and that the weather conditions that day were "good," meaning "there was no rain or snow out that day." ECF Nos. 14-3 at 16, 14-4 at 2. At CMI's request, Ivey also obtained surveillance video of the aisle behind the registers from one hour before Mrs. Collins's fall to one hour after her fall.[7] *See* ECF Nos. 14-3 at 15, 17; 15-5.

---

[7] Wal-Mart's "general policy" is to preserve two hours of surveillance video--one hour before the incident and one hour after--when requested by "CMI, the legal department, or a claimant . . . unless other specific time periods are requested." ECF No. 15-5. After 30 days, the hard-drive on which the surveillance video is stored becomes full and is over-written. *Id.* Because Mrs. Collins requested surveillance video from Wal-Mart for the day of her fall over 30 days after the fall occurred, it had been deleted, except for the hour before and hour after she fell. *See id.*

4

The surveillance video--although grainy--shows that, in the hour before her fall, dozens of customers and Wal-Mart employees[8] passed the spot where Mrs. Collins fell. See ECF Nos. 13-4, 14-3 at 22-26. The video does not show any other customer or employee slipping on the water or looking at the ground where Mrs. Collins fell. See ECF Nos. 13-4, 14-3 at 23-26. Also, the video does not show how the water got on the floor, and the water spot is not visible.[9] See ECF Nos. 13-4, 14-3 at 25-26.

In his deposition, Ivey testified that he did a general sweep of the store for safety hazards each day upon his arrival to work.[10] See ECF No. 14-3 at 7. Throughout the day, maintenance workers would continually clean the floors in different parts of the store and would respond quickly when called to clean up hazardous conditions.[11] See id. at 8. Also,

---

[8] Wal-Mart employees are recognizable in the video, because they are wearing blue shirts, khaki pants, and employee badges around their necks. ECF Nos. 13-4, 14-3 at 19.

[9] After reviewing the surveillance video, Ivey confirmed that he saw no evidence of a spill occurring in the video and no indications that any other customers "were avoiding any sort of hazard in the site where the slip and fall occurred." See ECF No. 14-3 at 26.

[10] Ivey testified that he spent 80% of his time in his office and 20% of his time walking the floor. ECF No. 14-3 at 6. His asset protection associate spent 95% of her time on the floor and only 5% in the office. Id.

[11] Wal-mart does not keep maintenance or other logs recording when spills are cleaned. ECF No. 14-3 at 9-10.

if they saw a spill or hazardous condition in the store, all Wal-Mart associates and managers were trained to stand next to the spill or hazardous condition until it was cleaned. *See id.* at 8-9. Even employees working at cash registers were instructed to stop what they were doing if they saw a spill and stand next to it. *See id.* at 8-10. Ivey also testified that 60% of the spills in the store occurred in the area between the registers and the exit, where Mrs. Collins fell. *See id.* at 13.

On January 30, 2013, Mrs. Collins and John sued Wal-Mart in the Circuit Court for Baltimore County, Maryland, claiming that, as a result of Wal-Mart's negligence, Wal-Mart was liable for Mrs. Collins's injuries from her fall and loss of consortium. *See* ECF No. 2. On February 19, 2013, Wal-Mart removed to this Court on the basis of diversity jurisdiction. ECF No. 1.

On August 22, 2013, after discovery was completed, Wal-Mart moved for summary judgment. ECF No. 13. On September 9, 2013, Mrs. Collins opposed the motion. ECF No. 14. On September 15, 2013, Wal-Mart replied. ECF No. 15. On January 15, 2014, the Court ordered the parties to submit additional briefing on jurisdiction. ECF No. 16. On January 27 and 28, 2014, the parties submitted additional briefing. ECF Nos. 17, 18.

II. Analysis

A. Jurisdiction

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing where such action is pending." A defendant may only remove state court actions that "originally could have been filed in federal court." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L.Ed.2d 318 (1987). "A party seeking to adjudicate a matter in federal court must allege and, when challenged, must demonstrate the federal court's jurisdiction over the matter." *Strawn v. AT & T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008). Because removal raises "significant federalism concerns," the removal statutes must be strictly construed, and all doubts must be resolved in favor of remanding the case to state court. *Md. Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255, 260 (4th Cir. 2005).

To remove a case, the defendants must file a notice of removal in the district court within 30 days after receiving the initial pleading. 28 U.S.C. § 1446(a)-(b) (2006). The notice of removal must contain "a short and plain statement of the grounds for removal." *Id.* § 1446(a). The sufficiency of the

7

jurisdictional allegations in the notice of removal is governed by the same pleading standard that applies to jurisdictional allegations in a complaint. *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008). Thus, in diversity cases, a sufficient notice of removal must allege only "that the parties are of diverse citizenship and that the matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332." *Id.* (*quoting* Fed. R. Civ. P. 84; Fed. R. Civ. P. app. Form 7(a)).

Diversity jurisdiction requires complete diversity--"there is no plaintiff and no defendant who are citizens of the same State"--and an amount in controversy exceeding $75,000. *See Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 388, 118 S. Ct. 2047, 2052, 141 L. Ed. 2d 364 (1998); 28 U.S.C. § 1332(a)(1). A corporation, like Wal-Mart Inc., has the citizenship of its state of incorporation and the state where its principal place of business is located. 28 U.S.C. § 1332(c)(1); *Cent. W. Virginia Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 102 (4th Cir. 2011). Limited partnerships, like Wal-Mart East, have the citizenship of their partners. *See, e.g., Maday v. Toll Bros. Inc.*, 72 F. Supp. 2d 599, 603-04 (E.D. Va. 1999) (*citing Carden v. Arkoma Associates*, 494 U.S. 185, 192-93, 110 S. Ct. 1015, 108 L.Ed.2d 157 (1990)). Limited liability companies have the citizenship of their

members. *See Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 120 (4th Cir. 2004).

The plaintiffs are citizens of Maryland. ECF No. 2 ¶ 1. The notice of removal states that Wal-Mart Inc. is "the parent corporation of all Defendants" and has a principal place of business in Arkansas. ECF No. 1 at 2. It also states that Wal-Mart East "is a wholly owned entity with limited partnership of Wal-Mart Stores, Inc."[12] *Id.* Because the Court has an obligation to determine if it has subject matter jurisdiction, *see Hertz Corp. v. Friend*, 559 U.S. 77, 94, 130 S. Ct. 1181, 1193 (2010), the Court *sua sponte* ordered the parties to submit additional briefing to ensure the parties are completely diverse, ECF No. 16. On a challenge--by the Court or another party--of jurisdictional allegations in the notice of removal, "'the party seeking removal bears the burden of demonstrating that removal jurisdiction is proper.'" *Ellenburg*, 519 F.3d at 200 (quoting *In re Blackwater Sec. Consulting, LLC*, 460 F.3d 576, 594 (4th Cir. 2006)). "But this burden is no greater than is required to establish federal jurisdiction as alleged in a complaint." *Id.*

---

[12] The notice of removal states that Mrs. Collins and John "seek[] judgment . . . in the combined amount exceeding . . . $75,000." ECF No. 1 at 2. The plaintiffs do not challenge this allegation. *See* ECF No. 18.

9

In their submission, the defendants assert that Wal-Mart East has two partners--a general partner, WSE Management, LLC and a limited partner, WSE Investment, LLC. ECF No. 17 at 1. WSE Management, LLC and WSE Investment, LLC have one member, Wal-Mart Stores East, LLC. *Id.* Wal-Mart Inc. is the only member of Wal-Mart Stores East, LLC and is a Delaware corporation with a principal place of business in Arkansas. *Id.* These allegations establish complete diversity because the plaintiffs are citizens of Maryland, and the defendants are citizens of Arkansas and Delaware. *See id.* at 2; ECF No. 2 ¶ 1.

In their submission, the plaintiffs do not move to remand the case, argue that the Court lacks jurisdiction, or challenge the accuracy of Wal-Mart's allegations. Instead, they argue that the defendants' submissions "fail to provide a sufficient factual basis necessary to determine the Defendants' respective principal place of business." ECF No. 18 at 1. However, under *Ellenburg*, 519 F.3d at 200, the defendants have "demonstrat[ed] that removal jurisdiction is proper," because their submissions sufficiently allege the existence of diversity jurisdiction under the notice pleading standard governing the sufficiency of allegations in a complaint. *See, e.g.*, *Mattison v. Wal-Mart Stores, Inc.*, 6:10-CV-01739-JMC, 2011 WL 494395, at *2 (D.S.C. Feb. 4, 2011) (rejecting plaintiff's argument that Wal-Mart's "conclusory statement that the jurisdiction amount of this Court

has been satisfied [in Wal-Mart's notice of removal] is insufficient to confer federal court jurisdiction") (*citing* *Ellenburg*, 519 F.3d at 200); *Wickline v. Dutch Run-Mays Draft, LLC*, 606 F. Supp. 2d 633, 636 (S.D.W. Va. 2009) (under *Ellenburg*, when "a district court examines the sufficiency of the notice of removal *sua sponte* in search of a procedural defect . . . federal jurisdiction is properly pled when a removing defendant alleges that the parties are diverse and that the amount in controversy exceeds the jurisdictional limit"). The Court has jurisdiction.

B. Legal Standard for Summary Judgment

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[13] In considering the motion, the judge's function is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

---

[13] Rule 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . . to express the direction to grant summary judgment." Fed. R. Civ. P. 56 advisory committee's note.

The Court must "view the evidence in the light most favorable to . . . the nonmovant and draw all reasonable inferences in [her] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted).

C. Negligence

To establish negligence under Maryland law,[14] a plaintiff must prove that: 1) the defendant was under a duty to protect the plaintiff from injury; 2) the defendant breached that duty; (3) the plaintiff suffered actual injury or loss; and (4) the loss or injury proximately resulted from the defendant's breach of the duty. *Valentine v. On Target, Inc.*, 353 Md. 544, 549, 727 A.2d 947 (1999).

---

[14] Maryland applies the rule of *lex loci delicti* to determine the law to apply in tort cases. *See, e.g., Philip Morris Inc. v. Angeletti*, 358 Md. 689, 750, 752 A.2d 200, 233 n.28 (2000). Under that rule, the court applies the law of the state "where the injury—the last event required to constitute the tort—occurred." *Lab. Corp. of America v. Hood*, 395 Md. 608, 615, 911 A.2d 841, 845 (2006). All the events at issue in this suit occurred at a Wal-Mart store in Maryland and at the plaintiffs' homes, also in Maryland. *See, e.g.*, ECF Nos. 14-2 at 5, 9. Accordingly, Maryland law governs Mrs. Collins's negligence claim.

In Maryland, storekeepers owe their customers "a duty of ordinary and reasonable care to maintain their premises in a reasonably safe condition." *See Chamberlain v. Denny's, Inc.*, 166 F. Supp. 2d 1064, 1068-69 (D. Md. 2001) (*citing Moulden v. Greenbelt Consumer Serv.*, 239 Md. 229, 232, 210 A.2d 724 (1965)). "The customer is entitled to assume that the proprietor will exercise reasonable care to ascertain the condition of the premises, and if he discovers any unsafe condition he will either take such action as will correct the condition and make it reasonably safe or give a warning of the unsafe condition." *Maans v. Giant Of Maryland, L.L.C.*, 161 Md. App. 620, 627, 871 A.2d 627, 631 (2005). Thus, a storekeeper has the duty to warn customers of "known hidden dangers," to inspect its premises, and "to take reasonable precautions against foreseeable dangers." *Id.* (quoting *Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md. App. 381, 388, 693 A.2d 370 (1997) (internal quotations omitted)). However, a storekeeper is not an insurer of its customers' safety, and no presumption of negligence arises merely because a customer is injured in a store. *Moulden*, 239 Md. at 232, 210 A.2d at 725.

To establish a breach of duty, the plaintiff must prove that a dangerous condition existed and that the storekeeper caused the dangerous condition or "had actual or constructive knowledge of the dangerous condition . . . in sufficient time to

give [it] the opportunity to remove it or to warn the invitee."
*See Joseph v. Bozzuto Mgmt. Co.*, 173 Md. App. 305, 315, 918 A.2d 1230, 1235 (2007) (quoting *Rehn v. Westfield America*, 153 Md. App. 586, 593, 837 A.2d 981 (2003), *cert. denied*, 380 Md. 619, 846 A.2d 402 (2004) (internal quotations omitted)); *Link v. Hutzler Bros. Co.*, 25 Md. App. 586, 592, 335 A.2d 192, 196 (1975). "Whether there has been sufficient time for a business proprietor to discover, cure, or clean up a dangerous condition depends on the circumstances surrounding the fall." *Maans*, 161 Md. App. at 629, 871 A.2d at 632. To establish constructive knowledge, the plaintiff must show how long the dangerous condition existed. *Id.* at 640, 639; *Joseph*, 173 Md. App. at 316, 918 A.2d at 1236. This "time on the floor evidence" has two purposes:

> (1) it requires a demonstration of how long the dangerous condition existed prior to the accident so that the fact-finder can decide whether the storekeeper would have discovered it if he or she had exercised ordinary care; and (2) it also shows that the interval between inspections was at least as long as the time on the floor.

*Maans*, 161 Md. App. at 639, 871 A.2d at 638; *Jones v. Wal-Mart Stores, Inc.*, CIV.A. WGC-12-1334, 2013 WL 1742136, at *4 (D. Md. Apr. 22, 2013). The evidence must be more than "speculation or conjecture" to submit the case to the jury. *See Maans*, 161 Md. App. at 636, 871 A.2d at 636.

Here, the parties do not dispute that Wal-Mart had a duty to exercise ordinary care to keep its store reasonably safe for Mrs. Collins, its customer. See ECF Nos. 14-1 at 3, 15 at 4. Wal-Mart argues that Mrs. Collins cannot establish that it breached that duty, however, because "[a]ssuming . . . that the Plaintiff did slip on some type of liquid substance, there is no evidence . . . as to how it got there, or how long it remained on the floor prior to the time this incident occurred." ECF No. 13-1 at 9. Mrs. Collins contends that "[t]he security video evidence . . . reveals that, for sixty-four (64) minutes prior to the Plaintiff's fall, [a] puddle of water was present on the Defendants' store floor," because the video does not show any evidence of a spill occurring. ECF No. 14-1 at 5. In response, Wal-Mart asserts that "this argument is based on Plaintiff's pure speculative belief that the spill existed for at least an hour prior to Plaintiff's fall." ECF No. 15 at 7.

There is no indication in the surveillance video of a spill occurring, and the spot of water on the floor is not visible.[15] See ECF No. 13-4. From this evidence--viewed in the light most favorable to Mrs. Collins--a reasonable juror could infer that the spill occurred before the time recorded in the video, and

---

[15] In his deposition, Ivey confirms that he saw no evidence of a spill occurring in the video and no indications that any other customers "were avoiding any sort of hazard in the site where the slip and fall occurred," see ECF No. 14-3 at 26.

that the water was accordingly on the floor for at least 64 minutes before Mrs. Collins fell.[16] Further, given Ivey's testimony that over 60% of spills occur in the store area between the cash registers and the exit, see ECF No. 14-3 at 13, a jury could also conclude that Wal-Mart breached its duty of care by failing to inspect that area and detect the spill for at least 64 minutes, see Jones, 2013 WL 1742136, at *4-*6 & n.1 (31 minutes "was a sufficiently long period of time for Wal-Mart to discover [the hazardous condition], particularly in light of the video surveillance showing Wal-Mart employees walking directly past and moving near [it]"--thus evidence was sufficient to create a triable issue of fact on issue of constructive notice). Because Mrs. Collins has submitted sufficient evidence to create a genuine dispute of material fact on the issue of Wal-Mart's

---

[16] The defendants argue that the surveillance video is "irrelevant and inadmissible" for the purpose of showing a spill, because it "is incapable of [] capturing any detail such as anyone dripping any liquids from their carts or bags." See ECF No. 13-1 at 15. Although the video is not high quality, it provides sufficient detail for a jury to reasonably infer that, if a spill occurred during the time captured by the footage, it would be visible on the screen. Accordingly, the video evidence is relevant to determining whether Wal-Mart breached its duty to Mrs. Collins, because a juror could infer that the dangerous condition existed for a sufficient time to give Wal-Mart constructive notice of the spill. Cf. Moore v. Am. Stores Co., 169 Md. 541, 182 A. 436, 440 (1936) ("[I]f it is shown that the conditions have existed for a time sufficient to permit one under a duty to know of them, to discover them, had he exercised reasonable care, his failure to discover them may in itself be evidence of negligence sufficient to charge him with knowledge of them.").

breach of its duty to Mrs. Collins, summary judgment will be denied.

III. Conclusion

For the reasons stated above, the defendants' motion for summary judgment will be denied.

| 2/12/14 | /s/ |
|---|---|
| Date | William D. Quarles, Jr.<br>United States District Judge |